IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MILTON COLEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-834-STE |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge

(ALJ) issued an unfavorable decision. (TR. 15-29). The Appeals Council denied Plaintiff's request for review. (TR. 669-671). Mr. Coleman appealed to this Court which remanded the case for further administrative proceedings. (TR. 675-683). On April 21, 2021, the Appeals Council remanded the case, specifically ordering, in part, that based on the timing of Plaintiff's applications for benefits, "the rules for cases filed before March 27, 2017" would be applicable to adjudicating Plaintiff's case. (TR. 690).[1] A second administrative hearing was held, followed by a second unfavorable decision dated January 28, 2022. (TR. 601-616, 627-645). The Appeals Council denied Plaintiff's request for review of that decision,[2] rendering it the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 8, 2015, the amended alleged onset date. (TR. 604). At step two, the ALJ determined Mr. Coleman suffered from the severe impairments involving: depressive disorder; anxiety disorder; sedative, hypnotic, and anxiolytic addiction disorder; cannabis addiction dependence; degenerative disc disease; and chronic obstructive pulmonary disease. (TR. 604). At step three, the ALJ found that

---

[1] These rules will be applied by the Court to this case. *See* 20 C.F.R. §§ 404.1513a, 404.1527, 413.913a, 404.927.

[2] (TR. 591-594).

2

Plaintiff's impairment did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 605).

At step four, the ALJ concluded that Mr. Coleman retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant must avoid all exposure to environmental irritants such as odors, fumes, dusts, and gases. The claimant is able to perform simple routine, repetitive tasks; free of production rate pace; and, is able to have occasional interaction with supervisors, coworkers, and the general public.

(TR. 607). With this RFC, the ALJ concluded that Plaintiff was incapable of performing his past relevant work. (TR. 614). As a result, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 637). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 637-638). The ALJ then adopted the VE's testimony and concluded, at step five, that Mr. Coleman was not disabled based on his ability to perform the identified jobs. (TR. 615).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges error in: (1) the ALJ's evaluation of prior administrative medical findings and (2) the RFC. (ECF No. 15:8-28).

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d.

1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.   PLAINTIFF'S FIRST PROPOSITION

In his first point of error, Plaintiff challenges the ALJ's evaluation of prior administrative medical findings.[3] The Court recognizes that the ALJ erred, but concludes that the error was harmless.

### A.   The ALJ's Duty to Evaluate Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. §§

---

[3] Prior administrative medical findings are findings, other than the ultimate determination about whether an individual is disabled, about a medical issue made by Federal and State agency medical and psychological consultants at a prior level of review, based on a review of the evidence in the claimant's case record, including, but not limited to, an individual's RFC. 20 C.F.R. § 404.1513(a)(5).

404.1527(c) & 416.927(c). The weight given each opinion will vary according to the relationship between the claimant and medical professional. *Hamlin*, 365 F.3d at 1215. If controlling weight is declined to a claimant's treating physician, the ALJ must assess the opinion under a series of factors which are considered when assessing *any* medical opinion, regardless of its source. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R §§ 404.1527 & 416.927.

Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p, at *5. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### B.   Prior Administrative Medical Findings and the ALJ's Related Evaluation

At the initial and reconsideration levels of the disability determination, State agency psychologists Drs. Susan Daugherty and Burnard Pearce evaluated Plaintiff's mental residual functional capacity (MRFC) and rendered "prior administrative medical findings." In doing so, the psychologists completed paperwork in the form of an assessment which is divided into two sections. In "Section One," the author is instructed to answer a series of questions to "help determine the individual's ability to perform sustained work activities." (TR. 67, 83, 107, 125). Under this first section, the author rates the severity of an individual's limitations, if any, in four specific domains. *See* TR. 67-69, 83-85, 107-109, 125-127. "However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (TR. 67, 83, 107, 125). Thus, while the questions in Section One are designed to aid a doctor's assessment, it is the narrative discussions ("Section Three") that represent the Plaintiff's MRFC. *See Smith v. Colvin*, 821 F.3d 1264, 1268 n.1 (10th Cir. 2016).

In Section One of the MRFC, in the area of "social interaction," Dr. Daugherty concluded that Plaintiff was "moderately" limited in his ability to interact appropriately with the general public and was "not significantly limited" in his ability to: (1) accept instructions and respond appropriately to criticism from supervisors and (2) get along with co-workers or peers. (TR. 68, 84). In Section One of the MRFC that Dr. Pearce

completed, he concluded that Mr. Coleman was "markedly" limited in his ability to interact appropriately with the general public and was "not significantly limited" in his ability to: (1) accept instructions and respond appropriately to criticism from supervisors and (2) get along with co-workers or peers. (TR. 108, 126). In Section Three—the "narrative" portion of the MRFC—both psychologists concluded that Plaintiff: (1) could relate to supervisors and peers on a superficial work basis and (2) could not relate to the public. (TR. 69, 85, 109, 127).

    The ALJ acknowledged these opinions and stated:

> The undersigned makes a slightly different interpretation of the claimant's functionality in the domain area of social interaction. Otherwise these findings and assessments have been given substantial weight as consistent with the serial mental status findings, treating medical records, function reports, objective medical evidence, and the overall longitudinal record in its entirety. For these reasons, the same have been incorporated into the determination of the claimant's residual functional capacity.

(TR. 612).

### C.    Harmless Error in the ALJ's Evaluation of the Opinions from Drs. Daugherty and Pearce

    As noted, the RFC allowed Plaintiff to work in jobs in which he would have "occasional interaction with supervisors, coworkers, and the general public." (TR. 607). Clearly, the ALJ's RFC determination does not reflect, verbatim, the MRFC findings from Drs. Daugherty and Pearce regarding Plaintiff being limited to only "superficial" contact with supervisors and co-workers and having no contact with the general public. Plaintiff recognizes the differences and argues that the ALJ failed to: (1) "build a logical bridge

between her findings and the evidence" and (2) explain why she chose not to adopt the limitations of the State Agency psychologists. (ECF No. 15:12-21). The Court agrees with Mr. Coleman, but concludes that the error is harmless.

As stated, Drs. Daugherty and Pearce presented their findings via a form questionnaire which first listed Plaintiff's various functions in four particular domains: (1) understanding and memory; (2) concentration, persistence, and pace; (3) social interaction, and (4) adaptation. *See* TR. 67-69, 83-85, 107-109, 125-127. In evaluating the opinions from Drs. Daugherty and Pearce, the ALJ stated that she "ma[de] a slightly different interpretation of the claimant's functionality in the domain area of social interaction." (TR. 612). The ALJ does not explain whether her statement referred to the findings in each particular domain ("Section One") or the narrative portion of the opinions which reflected the psychologists' MRFC determinations. ("Section Three"). But because it is the "narrative" portion of the form which represents the Plaintiff's MRFC, the Court will examine the differences, if any, between the psychologists' narrative findings and the RFC. The differences are two-fold: (1) the psychologists found Mr. Coleman unable to interact with the general public, while the RFC stated that Plaintiff could have "occasional" contact with the general public and (2) the psychologists noted that Plaintiff could have "superficial" contact with co-workers and supervisors, while the RFC limited Plaintiff to only "occasional" contact with the same. *See supra*.

Clearly, the ALJ rejected the psychologists' findings regarding Plaintiff's ability to interact with the general public. As a result, she was required to explain her actions. *See*

8

*supra*, *Watkins v. Barnhart*, 350 F.3d at 1300 (noting that if the ALJ rejects an opinion completely, she must give "specific, legitimate reasons" for doing so.") (internal citations omitted). It is not obvious to the Court why the ALJ chose to "make a slightly different interpretation of the claimant's functionality in the domain area of social interaction," but the Defendant disagrees, arguing that "other portions of the decision make the ALJ's rationale readily apparent," including:

- The ALJ's findings at step three, regarding activities that "require social interaction;"

- The ALJ's rejection of an opinion from Dr. Patrick Horn, who stated that Plaintiff had an inability to interact with co-workers and supervisors; and

- The ALJ's rejection of an opinion from Dr. Rachel Floyd who noted that Plaintiff had extreme limitations in his ability to interact appropriately with co-workers, supervisors, and the public.

(ECF No. 21:7-8). As an initial observation, the Court notes that only one of Defendant's "rationales" involve Plaintiff's ability to interact with the general public—Dr. Floyd's opinion. The ALJ rejected her opinion as "inconsistent with [Plaintiff's] general presentation to treating providers on multiple serial occasions, typically without any agitation, but rather having normal range mood and affect." (TR. 613). The Commissioner would have the Court impute the ALJ's rationale for rejecting Dr. Floyd's opinion as her reason for not adopting the opinions from Drs. Daugherty and Pearce. But the ALJ herself did not rely on these findings for rejecting the State Agency psychologist's opinions and the Court may not do so now. *See Haga v. Astrue,* 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's

decision that are not apparent from the ALJ's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "substitute [its] judgment for that of the Commissioner.").

Ms. Kijakazi also cites what she deems a "similar case" in this Court "where state medical experts found the claimant could not relate to the public; however, the ALJ determined that Plaintiff could "occasionally interact with the public" and the ALJ's findings were affirmed. *See* ECF No. 21: 8 (citing *Bradford v. Berryhill*, No. CIV-18-1008-HE, 2019 WL 3417368, at *2-3 (W.D. Okla. Apr. 22, 2019), report and recommendation adopted, 2019 WL 2388864 (W.D. June 6, 2019). But in *Bradford*, the issue was whether substantial evidence existed, not whether the ALJ committed legal error in the consideration of an opinion. *See Bradford v. Berryhill*, No. CIV-18-1008-HE, 2019 WL 3417368, at *2 (W.D. Okla. Apr. 22, 2019) ("Based on this perceived discrepancy [between a medical opinion regarding the claimant's ability to interact with the public and the RFC which allowed for occasional interaction with the public], Plaintiff argues the ALJ's opinion is not supported by substantial evidence."). Here, however, Plaintiff argues that the ALJ committed *legal error* in the evaluation of the opinions from Drs. Daugherty and Pearce. And the Tenth Circuit has held that the presence of substantial evidence does not affect whether legal error was committed *See Parker v. Commissioner*, SSA, 772 F. App'x 613, 617 (10th Cir. 2019) (rejecting the Commissioner's argument that the agency had substantial evidence for its assessment of plaintiff's limitations, because the plaintiff "ha[d] not questioned the existence of substantial evidence, [but] argue[d] instead that

the agency legally erred by failing to explain why its assessment of [his] mental limitations deviated from the two medical opinions" and noting that "[i]f [the plaintiff] is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence.").

Finally, the Commissioner argues that any error in failing to incorporate the findings regarding "no contact" with the general public and only "superficial" contact with coworkers and supervisors is harmless because none of the jobs relied on at step five require such interaction. (ECF No. 21:11-12). Ms. Kijakazi is correct.

In the instant case, the issue concerns the ALJ's failure to incorporate the findings from Drs. Daugherty and Pearce regarding Plaintiff's ability to perform work which involves "superficial" contact with co-workers and supervisors and have "no contact" with the general public. Even though the ALJ's RFC did not include those particular limitations, which the Court deemed erroneous, *see supra*, the Court concludes that the ALJ's error was harmless.

In *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004), the Tenth Circuit Court of Appeals defined its allowance of harmless error in the context of Social Security cases. The Court stated: "it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on the material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* In the instant

case, the jobs identified by the VE at step five did not require any level of interaction with co-workers, supervisors, or the general public, rendering the ALJ's error in failing to consider the State Agency psychologists' opinions harmless.

"Each job listed in the DOT is described by reference to various components. One component is 'Worker Functions.' The worker function labeled 'People' expresses the degree of interaction with other people that the job requires." *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005); *see also* DOT Appendix B–Explanation of Data, People, and Things, 1991 WL 688701. The "People" ratings range from the highest rating, 0, which requires mentoring, to the lowest rating, 8, which requires taking instructions. *Id.* In addition to providing a "People" rating, each DOT job description indicates whether the "People" aspect of the job is "significant," or "not significant." Here, the ALJ ultimately determined that Mr. Coleman could perform the jobs of: Folding Machine Operator, DOT #208.685-014; Hand Package Inspector, DOT #559.687-074; and Machine Tender Feeder, DOT #754.685-014. *See* TR. 615. The "People" rating for all three jobs is 8, the lowest rating, and each DOT listing indicates that the "People" aspect of the job is "not significant." *See* DOT #208.685-014; DOT #559.687-074; and DOT #754.685-014. Because Plaintiff's interaction with people (including supervisors, co-workers, and the general public) would be essentially nil in any of the jobs relied on by the ALJ at step five, any error in the RFC which allowed for "occasional" interaction with supervisors, co-workers, and the general public would be considered harmless. *See Jones v. Berryhill*, 720 F. App'x 457, 459 (10th Cir. 2017) (concluding that "any error in the ALJ's step-four

12

finding was harmless given the ALJ's alternative finding at step five" that the plaintiff could work in a job which did not require the particular abilities challenged by the plaintiff); *Lara v. Colvin*, No. CIV-12-1249-L, 2014 WL 37746, at *1, *4 (W.D. Okla. Jan. 6, 2014) (finding that "any error was harmless" where the ALJ failed to include a limitation to relating with supervisors and peers on a superficial basis in RFC where one of the occupations identified by the vocational expert did not require interaction on more than a superficial basis).

## VI.   PLAINTIFF'S SECOND PROPOSITION

At steps two and three of the sequential analysis, the ALJ determines whether the claimant has a severe impairment (step 2) and whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (step 3). Here, at step three, the ALJ found that Plaintiff had "moderate" limitations in the area of "adapting and managing oneself." (TR. 607). In his second proposition, Mr. Coleman alleges that the ALJ erred by failing to incorporate these moderate limitations in the RFC or failing to explain why any such limitations were not included. (ECF No. 15:24-28). The Court disagrees.

The ALJ apparently based his step three finding on the psychiatric review forms (PRT) completed by Drs. Daugherty and Pearce, who, in Section One of the MRFC, found that Plaintiff was "moderately limited" in his abilities to "respond appropriately to changes

in the work setting." *See* TR. 69, 85, 109, 127.[4] However, the Tenth Circuit Court of Appeals has held that "[t]he ALJ's finding of a moderate limitation . . . at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). As stated, while the questions in Section One are designed to aid a doctor's assessment, it is the narrative discussions ("Section Three") that represent the Plaintiff's MRFC. *See supra*, *Smith v. Colvin*, 821 F.3d at 1268 n.1.

In Section Three of the MRFC, both psychologists opined that Plaintiff "can adapt to a work situation,"[5]—findings which were adopted by the ALJ. *See* TR. 611-612. Thereafter, at step four, the ALJ did not account for any limitation in the area of "adapting and managing oneself," *see* TR. 607, nor was he required to, *See Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) ("Having adopted the limitations described in section III of the MRFCA, the ALJ was not also required to specifically adopt or discuss each individual limitation described in section I."). Because the ALJ adopted the Section Three findings which represented the psychologists' MRFC, the Court rejects Plaintiff's second proposition.

---

[4] Plaintiff argues that the "moderate" limitations at step three were also supported by Dr. Floyd, who opined that Plaintiff had moderate limitations in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (ECF No. 15:24). But the Plaintiff does not directly challenge the ALJ's treatment of Dr. Floyd's opinion and the Court will not entertain such argument.

[5] (TR. 69, 85, 109, 127).

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on June 9, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE